IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

CV 07 2067

FEUERSTEIN, J.

MANN, M.J.

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action No. _____ |
| CITY OF NEW YORK, | |
| Defendant. | |

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAY 21 2007 ★

BROOKLYN OFFICE

**COMPLAINT**

Plaintiff United States of America alleges, on information and belief, as follows:

1. This action is brought on behalf of the United States to enforce the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII"). As is more fully set forth below, the United States alleges that defendant City of New York's use of two written examinations on a pass/fail basis, as well as its rank-order processing of applicants, in the screening and selection of applicants for appointment to the rank of entry-level firefighter, has resulted in disparate impact upon black and Hispanic applicants, is not "job related for the position in question and consistent with business necessity" and does not otherwise meet the requirements of Title VII.

2. This Court has jurisdiction of this action under 42 U.S.C. § 2000e-5(f), 42 U.S.C. § 2000e-6(b), 28 U.S.C. § 1343(a)(3), and 28 U.S.C. § 1345.

3. Defendant City of New York is a municipal government and a political subdivision created pursuant to the laws of the State of New York.

4. Defendant City of New York is a person within the meaning of 42 U.S.C.

§ 2000e(a) and an employer within the meaning of 42 U.S.C. § 2000e(b).

5. Defendant City of New York maintains a fire department, the New York Fire Department a/k/a the Fire Department of the City of New York ("FDNY"), and employs firefighters who, among other things, are responsible for protecting individuals and property in the City of New York.

6. The FDNY, the largest fire department in the United States, employs approximately 11,000 uniformed firefighters in all ranks, of whom approximately 3.0% are black and 4.4% are Hispanic.

7. Defendant City of New York is responsible for establishing the terms, conditions and other practices which bear upon the selection and employment of FDNY firefighters.

8. Defendant City of New York has maintained and continues to maintain an open competitive examination process by which applicants for appointment to the rank of entry-level firefighter in the FDNY are screened and selected.

## EXAM NOS. 7029 AND 2043

9. Since 1999, defendant City of New York has used two open competitive examination processes in the screening and selection of applicants for appointment to the rank of entry-level firefighter in the FDNY. Each of these open competitive examination processes has involved the administration of a written examination as well as a physical performance test ("PPT").

10. The first of these open competitive examination processes, Exam No. 7029, involved the administration of a written examination (hereinafter "Exam No. 7029") by defendant City of New York in February 1999; and defendant City of New York used the

eligibility list that was generated therefrom from February 2001 until December 2004. The second of these open competitive examination processes, Exam No. 2043, involved the administration of a written examination (hereinafter "Exam No. 2043") by defendant City of New York in December 2002; and defendant City of New York has used the eligibility list that was generated therefrom since May 2004.

11. In January 2007, defendant City of New York administered a new entry-level firefighter written examination ("Exam No. 6019"). However, defendant City of New York continues to appoint entry-level firefighters from the eligibility list that was generated from Exam No. 2043, and defendant City of New York has advised the United States that defendant City of New York intends to use that list in the appointment of entry-level firefighters until May 2008.

12. Defendant City of New York used both Exam No. 7029 and Exam No. 2043 on a "pass/fail basis." As such, only those applicants who passed the written examination were eligible to take a physical performance test ("PPT").

13. Defendant City of New York also used both Exam No. 7029 and Exam No. 2043 as part of its "rank-order" processing of applicants. As such, applicants who passed both the written examination and the PPT were placed on an eligibility list in descending rank order of their combined written examination and PPT scores ("combined score"), plus bonus points. As the FDNY has needed to appoint additional entry-level firefighters, defendant City of New York has processed applicants from the eligibility list in descending rank order. As part of that processing, defendant City of New York has verified that applicants meet defendant City of New York's other qualifications for appointment.

Exam No. 7029

14. Defendant City of New York appointed approximately 3,207 entry-level firefighters from the eligibility list that resulted from Exam No. 7029, of whom 99 (or 3.1%) were black and 269 (or 8.4%) were Hispanic.

15. Defendant City of New York set the passing score for Exam No. 7029 at 84.705. The pass rate of whites on that examination was 89.9%, while the pass rates of blacks and Hispanics on that examination were only 61.2% and 77.0%, respectively. The differences in pass rates between whites and blacks, as well as between whites and Hispanics, are statistically significant.

16. Further, among those applicants who passed Exam No. 7029, the mean score of whites on that examination was higher than the mean examination score of either blacks or Hispanics. These differences in mean scores are statistically significant. Thus, while 57.9% of all white examination passers scored at or above 95.0, only 31.5% of all black passers and 39.0% of all Hispanic passers scored at or above 95.0. So also, while 85.9% of all white examination passers scored at or above 90.0, only 64.5% of all black examination passers and 73.9% of all Hispanic examination passers scored at or above 90.0.

17. Among those applicants who passed both Exam No. 7029 and the PPT and were ranked on the eligibility list, the mean written examination score of whites was higher than the mean examination score of either blacks or Hispanics. These differences in mean examination scores are statistically significant. Thus, blacks and Hispanics were under-represented among the higher-scoring applicants on the eligibility list, and over-represented among the lower-scoring applicants. For example, only 7.3% of black applicants on the eligibility list obtained written

examination scores in the top 20% of all applicants on the eligibility list, 66.0% of black applicants on the list scored in the bottom 40%, and 42.3% of black applicants on the list scored in the bottom 20%. Similarly, only 10.9% of Hispanic applicants on the eligibility list obtained written examination scores in the top 20% of all applicants on the eligibility list, 55.7% of Hispanics on the list scored in the bottom 40%, and 34.7% of Hispanics on the list scored in the bottom 20%.

18. These differences are reflected in the combined scores of whites, blacks and Hispanics who passed Exam No. 7029. The mean combined score of whites who passed Exam No. 7029 and the PPT was higher than the mean combined score of either blacks or Hispanics. These differences in mean combined scores are statistically significant. Thus, for example, only 8.4% of blacks on the eligibility list had a combined score in the top 20% of all applicants on the eligibility list, while 61.7% of blacks on the list had a combined score in the bottom 40%, and 34.2% of blacks on the list had combined scores in the bottom 20%. Similarly, only 10.9% of Hispanic applicants on the eligibility list had combined scores in the top 20% of all applicants on the list, while 52.6% of Hispanics on the list had combined scores in the bottom 40%, and 30.0% of Hispanic applicants on the list had combined scores in the bottom 20%.

Exam No. 2043

19. As of February 2, 2007, defendant City of New York had appointed approximately 1,549 entry-level firefighters from the eligibility list that resulted from Exam No. 2043, of whom 51 (or 3.3%) were black and 136 (or 8.8%) were Hispanic.

20. Defendant City of New York set the passing score for Exam No. 2043 at 70.000. The pass rate of whites on that examination was 97.2%, while the pass rates of blacks

and Hispanics were only 85.6% and 92.8%, respectively. These differences in pass rates between whites and blacks, as well as between whites and Hispanics, are statistically significant.

21. Further, among those applicants who passed Exam No. 2043, the mean score of whites on the examination was higher than the mean examination score of either blacks or Hispanics. These differences in mean examination scores are statistically significant. Thus, for example, while 35.2% of all white examination passers scored at or above 95.0, only 12.2% of all black passers and 21.0% of all Hispanic passers scored at or above 95.0. So also, while 67.3% of all white examination passers scored at or above 90.0, only 35.0% of all black passers and 51.1% of all Hispanic passers scored at or above 90.0.

22. Among those applicants who passed both Exam No. 2043 and the PPT and were ranked on the eligibility list, the mean written examination score of whites was higher than the mean written examination score of either blacks or Hispanics. These differences in mean written examination scores are statistically significant. Thus, blacks and Hispanics are under-represented among the higher-scoring applicants on the eligibility list, and over-represented among the lower-scoring applicants. For example, only 6.8% of black applicants on the eligibility list obtained written examination scores in the top 20% of all applicants on the eligibility list, while 66.9% of black applicants on the list scored in the bottom 40%, and 45.9% of black applicants on the list scored in the bottom 20%. Similarly, only 11.4% of Hispanic applicants on the eligibility list obtained written examination scores in the top 20% of all applicants on the list, while 56.6% of Hispanics on the list scored in the bottom 40% of all applicants on the list, and 31.8% of Hispanics on the list scored in the bottom 20%.

23. These differences are reflected in the combined scores of whites, blacks and

Hispanics who were ranked on the eligibility list resulting from Exam No. 2043. The mean combined score of whites who passed Exam No. 2043 and the PPT was higher than the mean combined score of either blacks or Hispanics. These differences in mean combined scores are statistically significant. Thus, for example, only 6.0% of blacks on the eligibility list have a combined score in the top 20% of all applicants on the eligibility list, while 67.5% of blacks on the list have combined scores in the bottom 40%, and 42.9% of blacks on the list have combined scores in the bottom 20%. Similarly, 10.1% of Hispanic applicants on the eligibility list have combined scores in the top 20% of all applicants on the list, while 52.6% of Hispanics on the list have combined scores in the bottom 40%, and 29.5% of Hispanic applicants on the list have combined scores in the bottom 20%.

<u>Defendant City of New York's Unlawful Use of Exam Nos. 7029 and 2043</u>

24. Defendant City of New York's use of Exam No. 7029 as a pass/fail screening device with a cutoff score of 84.705 has resulted in disparate impact upon black and Hispanic applicants for appointment to the rank of entry-level firefighter in the FDNY, is not job related for the position in question and consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

25. Defendant City of New York's rank-order processing of applicants who passed Exam No. 7029 and the PPT has resulted in disparate impact upon black and Hispanic applicants for appointment to the rank of entry-level firefighter in the FDNY, is not job related for the position in question and consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

26. Defendant City of New York's use of Exam No. 2043 as a pass/fail screening

device with a cutoff score of 70.000 has resulted in disparate impact upon black and Hispanic applicants for appointment to the rank of entry-level firefighter in the FDNY, is not job related for the position in question and consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

27. Defendant City of New York's rank-order processing of applicants who passed Exam No. 2043 and the PPT has resulted in disparate impact upon black and Hispanic applicants for appointment to the rank of entry-level firefighter in the FDNY, is not job related for the position in question and consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

### THE UNITED STATES' PATTERN OR PRACTICE CLAIM PURSUANT TO § 707 OF TITLE VII

28. Plaintiff United States realleges Paragraphs 1 through 27, *supra*, as if fully set forth herein.

29. Defendant City of New York has pursued and continues to pursue policies and practices that discriminate against blacks and Hispanics and that deprive or tend to deprive blacks and Hispanics of employment opportunities because of their race and/or national origin, in violation of Section 707 of Title VII, 42 U.S.C. § 2000e-6. Defendant City of New York has implemented these policies and practices, among other ways, by:

    a. failing or refusing to appoint, through its open competitive examination process, blacks and Hispanics to the rank of entry-level firefighter on the same basis as whites;

    b. using, in the screening and selection of applicants for appointment to the rank of entry-level firefighter through its open competitive examination process, written

- 8 -

examinations as pass/fail screening devices, where such use of the written examinations results in disparate impact upon blacks and Hispanics, is not job related for the position in question and consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

c. rank-order processing of applicants, in the screening and selection of applicants for appointment to the rank of entry-level firefighter through its open competitive examination process, which results in disparate impact upon blacks and Hispanics, is not job related for the position in question and consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

d. failing or refusing to take appropriate action to correct the present effects of its discriminatory policies and practices; and

e. failing or refusing to "make whole" those black and Hispanic applicants for appointment to the rank of entry-level firefighter who have been harmed by its unlawful use of its written examination.

30. In accordance with Section 707 of Title VII, 42 U.S.C. § 2000e-6, the United States, through the Department of Justice, has conducted an investigation of the policies and practices of defendant City of New York with respect to its screening and selection of applicants for appointment to the rank of entry-level firefighter as such practices affect blacks and Hispanics, has notified defendant City of New York of that investigation and of the United States' determination that the policies and practices described in Paragraphs 9 through 27, *supra*, are unlawful and has unsuccessfully attempted to resolve this matter through negotiation.

31. The policies and practices of defendant City of New York described in paragraphs 9 through 27, *supra*, constitute a pattern or practice of resistance to the full enjoyment by blacks and Hispanics of their right to equal employment opportunities without discrimination based upon race and/or national origin, in violation of Section 707 of Title VII, 42 U.S.C. § 2000e-6. This pattern or practice is of such a nature and is intended to deny the full exercise of the rights secured by Title VII. Unless restrained by order of this Court, defendant City of New York will continue to pursue policies and practices that are the same as or similar to those alleged in this Complaint.

## THE UNITED STATES' CLAIM PURSUANT TO § 706 OF TITLE VII

32. Plaintiff realleges Paragraphs 1 through 27, *supra*, as if fully set forth herein.

33. In August 2002, the Vulcan Society, Inc. ("the Vulcans"), an organization that represents incumbent black FDNY firefighters, filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that defendant City of New York's recruitment and selection procedures for the rank of entry-level firefighter in the FDNY, including defendant City of New York's use of Exam No. 7029, unlawfully discriminate against blacks on the basis of their race in violation of Title VII.

34. In accordance with Section 706 of Title VII, 42 U.S.C. § 2000e-5, the EEOC investigated the Vulcans' charge, found reasonable cause to believe that defendant City of New York's use of Exam No. 7029 discriminates against blacks on the basis of race in violation of Title VII, notified defendant City of New York of its determination, attempted unsuccessfully to achieve a voluntary resolution through conciliation, and subsequently referred the Vulcans' charge to the Department of Justice.

35. In March 2005, Candido Nunez, Roger Gregg and Marcus Haywood, three blacks who took Exam No. 2043, filed charges with the EEOC, alleging, *inter alia*, that defendant City of New York's policies and practices with respect to the appointment of entry-level firefighters, including defendant City of New York's use of Exam No. 2043, discriminate against blacks on the basis of race and/or color in violation of Title VII.

36. In accordance with Section 706 of Title VII, 42 U.S.C. § 2000e-5, the EEOC investigated the Nunez, Gregg and Haywood charges of discrimination, found reasonable cause to believe that defendant City of New York's use of Exam No. 2043 discriminates against blacks on the basis of race in violation of Title VII, notified defendant City of New York of its determination, attempted unsuccessfully to achieve a voluntary resolution through conciliation, and subsequently referred these charges to the Department of Justice.

37. The policies and practices described in Paragraphs 9 to 27, *supra*, discriminated against those blacks represented by the Vulcans, against charging parties Nunez, Gregg and Haywood and against all other similarly-situated black applicants whom defendant City of New York failed or refused to appoint to the rank of entry-level firefighter in the FDNY, in violation of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

38. All conditions precedent to the filing of suit have been performed or have occurred.

WHEREFORE, plaintiff United States prays for an order enjoining defendant City of New York, its officers, agents, employees, successors and all persons in active concert or participation with them, from engaging in discriminatory employment practices against blacks on the basis of race and against Hispanics on the basis of national origin, and specifically from:

   a. failing or refusing to appoint, through its open competitive examination

process, blacks and Hispanics to the rank of entry-level firefighter on the same basis as whites;

b.  using, in the screening and selection of applicants for appointment to the rank of entry-level firefighter through its open competitive examination process, written examinations as pass/fail screening devices, where such use of the written examinations results in disparate impact upon blacks and Hispanics, is not job related for the position in question and consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

c.  rank-order processing of applicants, in the screening and selection of applicants for appointment to the rank of entry-level firefighter through its open competitive examination process, based on the applicants' combined written examination and PPT scores, plus bonus points, where such use of applicants' combined scores results in disparate impact upon blacks and Hispanics, is not job related for the position in question and consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

d.  failing or refusing to take appropriate action to correct the present effects of its discriminatory policies and practices; and

e.  failing or refusing to "make whole" those black and Hispanic applicants for appointment to the rank of entry-level firefighter who have been harmed by its unlawful use of its written examinations.

Plaintiff United States prays for such additional relief as justice may require, together with its costs and disbursements in this action.

Dated: May 21, 2007

By:

Alberto R. Gonzales
Attorney General

_____
Wan J. Kim
Assistant Attorney General
Civil Rights Division

_____
Asheesh Agarwal
Deputy Assistant Attorney General
Civil Rights Division

_____
David J. Palmer
Chief

_____
John M. Gadzichowski
Principal Deputy Chief

_____
Sharon A. Seeley
Senior Trial Attorney

U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, N.W.
Patrick Henry Building, Room 4908
Washington, D.C. 20530
Telephone: (202) 514-4761
Facsimile: (202) 514-1005

Roslynn R. Mauskopf
United States Attorney
Eastern District of New York

By: *[signature]*

Michael J. Goldberger
Assistant U.S. Attorney
Chief, Civil Rights Litigation
Civil Division

By: *[signature]*

Elliot M. Schachner
Assistant U.S. Attorney

By: *[signature]*

Kenneth A. Stahl
Assistant U.S. Attorney

147 Pierrepont Street
Brooklyn, New York 11201
Telephone: (718) 254-7000
Facsimile: (718) 254-6081